IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MANUEL BAEZ, ,                                    )
                                                  )
            Plaintiff                             )        Case No. 1:20-cv-0148 (Erie)
                                                  )
vs.                                               )
                                                  )        HON. RICHARD A. LANZILLO
C/O FROELICH, C/O ROSENBERG,                      )        UNITED STATES MAGISTRATE JUDGE
SGT. WATTSON, LT. DUBE,                           ) ,
LT. BEDNORO, MS. LUCAS,                           )
PATRICIA THOMPSON, EARL JONES,                    ) .      MEMORANDUM OPINION ON
BRYAN E. FLINCHBAUGH, M. CLARK,                   )        DEFENDANTS' MOTION TO
DORINA VARNER,      i                             )        DISMISS  (ECF NO. 58)
                                                  )
            Defendants                            )

1.    Introduction

      Plaintiff Manuel Baez ("Baez"), an inmate incarcerated with the Pennsylvania Department of

Corrections ("DOC") at the State Correctional Institution at Forest ("SCI-Forest"), claims that the

Defendants violated his rights, including those under the First and Eighth Amendments, during

incidents that occurred between January and April, 2020, while Baez was incarcerated at SCI-Albion.

Pending before the Court is a motion to dismiss filed by Defendants Froelich, Rosenberg, Wattson,

Dube, Bednoro, Lucas, Thompson, Jones, Flinchbaugh, Clark, and Varner.  ECF No. 58.  For the

reasons that follow, the motion will **be granted in part and denied in part**.[1]

2.    Standard of Decision

      A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal

sufficiency of the complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a

motion to dismiss, the court is not opining on whether the plaintiff is likely to prevail on the merits;

---

[1] This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, and it can exercise pendent
jurisdiction over the state-law claims under 28 U.S.C. § 1337.  The parties consented to the jurisdiction of a United States
Magistrate Judge to conduct all proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C.
§ 636. *See* ECF Nos. 40, 55.

rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint should only be dismissed pursuant to Rule 12 (b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional Rule 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)). In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. *Twombly*, 550 U.S. at 555. *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should

assume their veracity and then determine whether they
plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629

F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In pro se cases, a court must employ less stringent standards in considering pro se pleadings

than when judging the work product of an attorney. *Fleming v. Pennsylvania Dep't of Corr.*, 2021 WL

1022628, at *2 (W.D. Pa. Mar. 17, 2021) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). When

presented with a pro se complaint, the court should construe the complaint liberally and draw fair

inferences from what is not alleged as well as from what is alleged. *Dluhos v. Strasberg*, 321 F.3d 365,

369 (3d Cir. 2003). In a § 1983 action, the court must "apply the applicable law, irrespective of

whether a pro se litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir.

2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also Nami v.

Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled

to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution").

Despite this liberality, pro se litigants are not relieved of their obligation to allege sufficient facts to

support a cognizable legal claim. *See, e.g., Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir.

2002); *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996). Finally, the United States Court of

Appeals for the Third Circuit in *Phillips v. County of Allegheny* has ruled that if a district court is

dismissing a claim under Fed. R. Civ. P. 12(b)(6) in a civil rights case, it must *sua sponte* "permit a

curative amendment unless such an amendment would be inequitable or futile." 515 F.3d 224, 245

(3d Cir. 2008).

With these considerations in mind, the Court turns to Baez' Complaint.

3.      The Complaint

3.1      Factual Background

Accepting the allegations in the Complaint as true, the events giving rise to Baez' claims

began in January of 2020, when Defendant Froehlich started to provide Baez with razors three times

a week while Baez was housed in the Restrictive Housing Unit ("RHU").  ECF No. 8, at p. 8, ¶ 1.

During this period, Froehlich is alleged to have encouraged Baez to use the razors to commit

suicide.  The Complaint states that "once C/O Froehlich found out why I was in prison, he would

say things like: 'if he had 30 to 60 years he would kill himself.'"  *Id.*, p. 5, ¶ 8.

On March 7, 2020, Defendant Bednoro instructed Baez to remove paper that was covering a

window in his cell.  Baez removed the paper, but not with sufficient alacrity to satisfy Bednoro, who

ordered another corrections officer to "spray [Baez] four times back to back in dangerous

quantities."[2]  *Id.*, p. 8, ¶ 9.  Baez alleges that he was not a threat to himself or others at the time he

was sprayed and that he was forced to stay in his cell, now contaminated with the spray.[3]

The next day, March 8, 2020, Baez claims that Defendant Froehlich told Baez, "you killed

that poor old man, you should kill yourself."  *Id.*, p. 5., ¶ 8.  That evening, Baez attempted suicide by

using a razor to cut "above my heart."  *Id.*  As Baez was attempting to harm himself, "C/O Snipper

sprayed me."  *Id.*, p. 8, ¶ 9(b).  Once he was restrained, Baez was taken to the "medical room."  *Id.*

Baez was put on "bed and bedding sheets restriction" from March 7, 2020, until March 14,

2020.  *Id.*, 15, ¶ 14.  Then, "on or around" March 25, 2020, Defendant Froehlich instructed another

corrections officer to confiscate Baez' mattress because he was on a restriction.  *Id.*  By April 1,

2020, Baez' mattress had not been returned and he complained to the Prison Review Committee

---

[2] Baez alleges that this took place at 7:30 AM and that he was "sluggish" due to the mental health medication he takes.

[3] The Complaint does not identify the spray but does include references to "chemical agents," leading the Court to conclude that oleoresin capsicum ("OC") spray was deployed against Baez. *See, e.g.*, ECF No. 8, p. 9.

("PRC").[4]  *Id.*  The PRC indicated it would speak with Defendant Dube.  *Id.*  The situation remained

unchanged and on April 22, 2020, Baez complained that Defendant Dube "never gave me my

mattress."[5]  *Id.*  On April 29, 2020, Baez again informed the PRC that he had now gone without a

mattress for over a month.  *Id.*  Baez also pleads that he spoke to Defendant Clark in person about

these issues and he apparently received his mattress the next day.  *Id.*

Baez also claims that he was also subjected to incidents of harassment after he filed

grievances about the events discussed above.  *Id.*, p. 10, ¶ 10.  Specifically, Baez states that after he

filed grievances against Defendant Froehlich, he was "repeatedly harassed verbally."  *Id.*  Froehlich

called Baez a "rat."  *Id.*  Froehlich and Defendant Rosenberg "practiced non-stop verbal abuse and

sexual verbal harassment" which caused him "humiliation and embarrassment with extreme stress."

*Id.*; *id.*, at p. 23, ¶ 5.  Baez faults unnamed members of "the Administration" for waiting five months

to remove Defendant Froehlich from Baez' pod.  *Id.*

The Complaint also levies some specific allegations against Defendants Lucas and Dube.

Baez charges that Defendant Lucas ignored his pleas for help and that she failed to intervene with

the PRC.  *Id.*, p. 20, ¶ 17.  He also claims that Defendant Lucas told him that prison personnel had

opened a letter he sent to Pennsylvania Governor Tom Wolf.  *Id.*  Baez alleges he received a

response from the Governor, but that it was never given to him.  *Id.*  Baez then states that on

April 1, 2020, Defendant Dube attempted to get him to withdraw Grievance Number 855779,

promising Baez "a good deal."  *Id.*, p. 11, ¶ 11.

3.2    The Claims

The Complaint specifically alleges three claims: First Amendment retaliation, state tort

violations, and Eighth Amendment infractions.  *Id.*, p. 24, ¶ (1)-(3).  Although Baez does not identify

---

[4] The Complaint identifies Defendants Flinchbaugh, Jones, Thompson, and Lucas as members of the PRC.

[5] The Complaint does not allege to whom Baez complained.

which Defendants against whom these claims are brought, he does elaborate that their collective
conduct involved:

> ... risk to health or safety, conditions of confinement, deliberate
> indifferent to obvious circumstantial evidence, officials acting under
> color of state law in which federal statute makes it a crime, no matter
> how temporary of injury, mental and emotional injury with physical
> injuries, confinement without mattress for one month, atypical and
> significant, unlawful chemical agents used.

*Id.* Given this explication and liberally construing Baez' Complaint, the Court can discern the
following claims:

A.   A First Amendment retaliation claim against Defendants Froehlich and Rosenberg
based on calling Baez a "rat" and using sexually harassing language toward him;

B.   An Eighth Amendment claim against Defendants Froehlich based on his deliberate
indifference to Baez' mental health needs which lead him to self-harm and to
attempt suicide;

C.   A state law negligence claim against Defendant Froehlich;

D.   An Eighth Amendment excessive force claim against Defendant Bednoro stemming
from the use of OC spray on March 7, 2020;[6]

E.   An Eighth Amendment conditions of confinement claim based on the failure to
decontaminate Baez' cell after deployment of OC spray and based on the one-
month denial of a mattress.

The Court considers the foregoing to be the central claims set out in the Complaint. Giving the
Complaint an especially generous reading, the Court has identified and analyzed other potential
claims that Baez may be attempting to assert.

---

[6] Baez was also sprayed with OC spray on March 8, 2020 by corrections officer "Snipper," but the Complaint cannot be
construed to bring a claim against this individual. Snipper is not identified as a defendant in this case and Baez admits
that he mistakenly identified "this C/O Snipper as Defendant Froehlich due to overwhelming mental breakdown." ECF
No. 8, p. 8, ¶ 9(b).

4.    Discussion and Analysis – The Central Claims

    4.1.    Baez fails to state a First Amendment retaliation claim against Defendants Froehlich and Rosenberg.

In support of his First Amendment retaliation claim against Defendants Froehlich and Rosenberg, Baez alleges that after he filed grievances against Defendant Froehlich, Froehlich and Rosenberg "repeatedly harassed [him] verbally." *Id.,* p. 10, ¶ 10; p. 23, ¶ 5. Baez further states that on March 24, 2020, at 12:09 PM, Defendant Rosenberg used sexually suggestive body language ("his hands going up and down with hip motions") in Baez' presence. *Id.,* p. 23, ¶ 5. He then pleads that these Defendants called him "a rat" and leveled sexually suggestive taunts against him. *Id.* He claims the actions of these Defendants lead to similar insults by other inmates and corrections officers. *Id.* As pleaded, this claim fails.

It is well established that "[r]etaliating against a prisoner for the exercise of his constitutional rights is unconstitutional," *Bistrian,* 696 F.3d at 376, and "as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Trotman v. Smith,* 2021 WL 3022039, at *5 (W.D. Pa. July 16, 2021) (quoting *Hartman v. Moore,* 547 U.S. 250, 256 (2006). A prisoner alleging First Amendment retaliation "must show (1) constitutionally protected conduct, (2) an adverse action taken by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Mack v. Warden Loretto FCI,* 839 F.3d 286, 297 (3d Cir. 2016) (quoting *Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir. 2003)).

The filing of a grievance is constitutionally protected conduct. *See Fantone v. Latini,* 780 F.3d 184, 192 n.8 (3d Cir. 2015) ("The filing of a prison grievance is an activity protected by the First Amendment."). Baez appears to have filed Grievance Number 855779 on March 18, 2020, thus satisfying the first requirement. *See* ECF No. 8-1, p. 5 (facility manager's appeal response

referencing grievance 855779 filed on 3/18/20). Baez' claim falters, however, at the second

requirement. To be actionable under § 1983, the adverse action "need not be great" but "must be

more than de minimis." *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006). Baez allegations, as

pleaded, are that he was subjected to verbal insults after filing his grievance. But verbal harassment

does not constitute adverse action for purposes of a First Amendment retaliation claim. *See Keziah v.*

*Sup't Kerestes*, 2015 WL 8488426, at *2 (M.D. Pa. Dec. 10, 2015) (citing *Burgos v. Canino*, 358 Fed.

Appx 302, 206 (3d Cir. 2009)). Put another way, "mere words, spoken to a prisoner by a corrections

officer, even when those words are harsh, do not amount to a violation of a prisoner's civil rights."

*Boomer v. Lewis*, 2009 WL 2900778, at *14 (M.D. Pa. Sept. 9, 2009), *aff'd*, 541 Fed. Appx. 186 (3d Cir.

2013) (citing *Greer v. York County Prison*, 2008 WL 3819866, at *2 (M.D. Pa. Aug. 11, 2008)).

    Although courts have found labeling an inmate a "snitch" or a "rat" can be an adverse

action for retaliation purposes, they have done so only when other prisoners were present or

encouraged "to take action against the snitch." *See, e.g., Hammonds v. Collins*, 2016 WL 1621986, at *6

(M.D. Pa. Apr. 20, 2016); Bracey v. Pa. Dep't of Corrections, 2012 WL 750911, at *9 (W.D. Pa. Feb.

17, 2012). Baez makes no allegation that either of these Defendants called him a "rat" in front of

other prisoners.[7] Thus, calling Baez a "rat," without more, is similar to general name calling, which

does not amount to an adverse action. *Id.* Baez has therefore failed to state a claim against these

Defendants. This claim will be dismissed.[8]

        4.2.    Baez' allegations support an inference that Defendant Froelich was deliberately
              indifferent to Plaintiff's serious mental health needs by providing Baez with razors
              and encouraging him to commit suicide.

---

[7] Baez does plead that the verbal assaults inflicted by Defendants Froehlich and Rosenberg "caused a chain reaction where many other correctional officers used the same verbal abuse with other inmates following there [sic] disrespectful insults." ECF No. 8, p. 10, ¶ 10. But even this is not an allegation that Froehlich and Rosenberg encouraged other inmates to take action against Baez because he was a "snitch" or a "rat." Instead, Baez merely contends that other inmates and officers picked up on and continued the insults inflicted by those two defendants, which is not an adverse action for purposes of First Amendment retaliation.

The Eighth Amendment imposes a duty on prison officials not only to provide "humane conditions of confinement," but to ensure that "reasonable measures" are taken to guarantee inmate safety and prevent harm. *Farmer v. Brennan*, 511 U.S. 825, 834–35 (1994). An inmate may prevail on a claim under the Eighth Amendment by showing that the defendant acted with "deliberate indifference" to a "substantial risk of serious harm" to his health or safety. *Id.* at 836. Here, Baez is proceeding on an Eighth Amendment claim that Defendant Froelich not only failed to prevent him from attempting suicide but encouraged him to do so. ECF No. 8, ¶ 8.

To state an Eighth Amendment claim based on deliberate indifference to the risk of suicide or self-harm, the plaintiff must allege facts supporting plausible inferences that (1) that the individual had a particular vulnerability to suicide, meaning that there was a "strong likelihood, rather than a mere possibility," that a suicide would be attempted; (2) that the prison official knew or should have known of the individual's particular vulnerability; and (3) that the official acted with reckless or deliberate indifference, meaning something beyond mere negligence, to the individual's particular vulnerability. *Palakovic v. Wetzel*, 854 F.3d 209, 223–24 (3d Cir. 2017); *see also Colburn v. Upper Darby Twnshp.*, 838 F.2d 663 (3d Cir. 1988) *(Colburn I), Colburn v. Upper Darby Twnshp.* 946 F.2d 1017 (3d Cir. 1991) *(Colburn II)*; and *Woloszyn v. County of Lawrence*, 396 F.3d 314 (3d Cir. 2005). *See also Easley v. Reuberg*, 2021 WL 3639734, at \*4 (W.D. Pa. July 30, 2021), *report and recommendation adopted*, 2021 WL 3634813 (W.D. Pa. Aug. 17, 2021) (citation omitted). The "particular vulnerability" standard does not entail a heightened pleading requirement or a showing that "the plaintiff's suicide was temporally imminent or somehow clinically inevitable." *Palakovic*, 854 F.3d at 230. However, the vulnerability "must be so obvious that a lay person would easily recognize the necessity for preventative action." *Id.* at 222. *See also Reed v. City of Philadelphia*, 2021 WL 2529915, at \*5 (E.D. Pa. June 17, 2021).

Here, Baez has alleged enough facts to state a claim. First, he states that he was on a "razor restriction" and that signage indicating this limitation was placed on his cell door. *See* ECF No. 8, p. 5, ¶ 8, p. 23, ¶ 6. And second, a sign on his cell door certainly imparts knowledge of that vulnerability to Defendant Froehlich, who worked in the RHU where Baez was housed. *Id.*, p. 5, ¶ 8. Providing Baez with razors then—and encouraging him to use them to harm or kill himself—sufficiently suggests a reckless disregard for Baez' particular vulnerability. *Id.* Defendants argue that Defendant Froehlich was not the officer assigned to pass out razors on Baez' cellblock, and did not make any statements encouraging suicide to Baez. These are factual arguments that must await discovery and development of the record. At this early stage of the proceedings, Baez has stated a claim against Defendant Froehlich.[9]

---

[9] In relating the factual allegations supporting this claim, Baez includes a citation to case law from the states of New York and Montana holding that "to constitute negligence, an act must violate a 'duty of care' owed to the injured person, and it must cause harm that is within the class of reasonably foreseeable hazards that a duty exists to prevent." *See* ECF No. 8, p. 6, ¶ 6(a). Putting aside the question whether law from those states applies here, a generous reading of this statement yields an attempt by Baez to state a claim of negligence against Defendant Froehlich under Pennsylvania law. Indeed, later in the Complaint Baez lists "State Tort Violations" among his claims for relief. *Id.*, p. 24. But claims against the Commonwealth, the DOC, or its officers and employees, are barred by the doctrine of sovereign immunity. *See Nguien v. Pennsylvania Dep't of Corr.*, 2021 WL 3563373, at *6 (W.D. Pa. Aug. 12, 2021). Here, Defendant Froehlich is a current employee of the Department of Corrections, a state agency, and, at all relevant times, was acting within the scope of his duties as a DOC employee. Thus, he would be immune from any state tort law claim. The Pennsylvania General Assembly has provided nine specific exceptions to this general grant of immunity: (1) the operation of a motor vehicle in the control or possession of a Commonwealth party; (2) health care employees; (3) care, custody, or control of personal property; (4) Commonwealth-owned property; (5) potholes or other dangerous conditions; (6) care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. *Nguien*, 2021 WL 356373, at *7 (citing 42 Pa. Cons. Stat. Ann § 8522). The allegations described in Baez' Complaint do not place Froehlich's actions within any of the nine exceptions to state sovereign immunity. And Froehlich was acting within the scope of his employment. Thus, to the extent Baez raises a state law negligence claim against Froehlich, it is barred by Pennsylvania law and will be dismissed.

4.3.   Defendants' Motion will be denied as to Baez' Eighth Amendment excessive force claim against Defendant Bednoro relating to his use of OC Spray on March 7, 2020.

Baez' Complaint next alleges that Defendant Bednoro used excessive force when he ordered an unknown officer to spray Baez "four times back to back in dangerous quantities." ECF No. 8, p. 8, ¶ 9. An excessive force claim under the Eighth Amendment "includes both an objective component, whether the deprivation of a basic human need is sufficiently serious, and a subjective component, whether the officials acted with a sufficiently culpable state of mind." *Wilson v. Seiter,* 501 U.S. 294, 298 (1991) ). The objective component turns on context and corresponds to "contemporary standards of decency." *Hudson v. McMillian,* 503 U.S. 1, 8 (1992) ). The crux of the subjective component is the principle that "only the unnecessary and wanton infliction of pain implicates" the Constitution. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994) ).

When evaluating the subjective component of an excessive force claim, a district court must determine "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers,* 475 U.S. 312, 320-21 (1986). To determine whether force was used in "good faith" or "maliciously and sadistically," the district court should examine several factors:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by prison officials; and (5) any efforts made to temper the severity of a forceful response.

*Brooks v. Kyler,* 204 F.3d 102, 106 (3d Cir. 2000) ). Specifically on the subject of the use of chemical spray in prisons, the Court of Appeals for the Third Circuit has held the following:

> [the] use of tear gas is not "a per se violation of the Eighth Amendment...." Rather, "[t]he use of mace, tear gas or other chemical agent of the like nature when reasonably necessary to prevent riots or escape or to subdue recalcitrant prisoners does not constitute cruel and inhuman punishment." *Soto v. Dickey,* 744 F.2d 1260, 1270 (7th Cir. 1984). *See also Michenfelder v. Sumner,* 860 F.2d 328, 336 (9th Cir. 1988) (policy allowing use of taser guns on inmate

11

> who refused to submit to a strip search does not constitute cruel and
> unusual punishment); *Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir.
> 1979) (the use of tear gas "in small amounts may be a necessary
> prison technique if a prisoner refuses after adequate warning to move
> from a cell or upon other provocation presenting a reasonable
> possibility that slight force will be required."); *Clemmons v. Greggs*, 509
> F.2d 1338, 1340 (5th Cir. 1975) (the use of tear gas when reasonably
> necessary to subdue recalcitrant prisoners does not violate the Eighth
> Amendment).

*Passmore v. Ianello*, 528 Fed. Appx. 144, 147-48 (3d Cir. 2013).

Here, Baez relates that, upon being awoken, he did not remove the paper from his cell window fast enough to satisfy Defendant Bednoro. ECF No. 8, p. 8, ¶ 9. He claims that he was on "mental health medication" that dulled his reflexes, making him respond sluggishly to Bednoro's early-morning commands. *Id.* According to Baez, he was in his own cell, asleep, and thus was not posing a danger or physically resisting anyone. *Id.* Ordering the use of OC spray in these circumstances as an initial response may be evaluated as the least appropriate means of securing an inmate's compliance. As the facts are alleged, the need for force is minimal, if necessary at all; the amount of spray allegedly used ("four times back to back in dangerous quantifies") is arguably more than was necessary; the injury inflicted ("as if I was on fire," and an attempted suicide) was not minimal; and no efforts to defuse the situation were alleged—indeed they were aggravated by forcing Baez to stay in his cell without appropriate decontamination measures. Therefore, at this early stage of the litigation, Baez' allegations support a plausible inference of malicious or sadistic conduct by Defendant Bednoro and, consequently, Defendants' motion will be denied as to this claim.

### 4.4. Defendants' Motion will be granted as to Baez' Eighth Amendment Conditions of Confinement claims.

The Complaint appears to allege an Eighth Amendment conditions of confinement claim based on two distinct conditions. First, the Complaint can be construed as challenging the fact that Baez was "forced to stay in the same cell without cleaning" for an unspecified length of time after

OC spray was used against him. ECF No., 8, p. 8, ¶ 9(a). The Complaint also alleges a conditions

of confinement claim related to the one-month confiscation of Baez' mattress. *Id.*, p. 15, ¶ 14.

These claims will be dismissed.

The claim relating to the conditions of his cell after the use of OC spray—namely that it was

not decontaminated—will be dismissed because Baez has failed to allege the personal involvement

of any of the Defendants in that omission. The personal involvement of a defendant is necessary to

sustain a Section 1983 claim. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal

involvement can be shown through allegations of personal direction or of actual knowledge and

acquiescence. *See Rode*, 845 F.2d at 1207; *see also Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir.

1995). Baez does not allege who was responsible for decontaminating his cell, which of the

Defendants denied his requests to decontaminate his cell, or who was responsible for transferring

him to a new cell (provided that was an option). The Complaint is also silent on whether any of the

Defendants had knowledge that Baez was being kept in a cell with the challenged conditions. *See,*

*e.g., Guille v. Johnson*, 2020 WL 1527954, at *3 (D.N.J. Mar. 31, 2020). Therefore, the conditions of

confinement claim based on Baez being kept in a cell where OC spray had been used will be

dismissed.

The same outcome applies to Baez' conditions of confinement claim based on a temporary

denial of a mattress. The Complaint alleges this claim against Defendant Froehlich and contends

that:

> I was put on a bed and bedding sheets restriction on March 7, 2020
> to March 14, 2020 without any miss-use of the mattress. Once I got
> my mattress, two weeks later on or around 3-25-20 sometime during
> showers which is lik[e] 9:30 AM C/O Frickele and Defendant
> Froehlich was taking me and the cell next to me out. Defendant
> Froehlich told C/O to take my mattress cause I was on a restriction
> (which been expired) but I still gave them my mattress. C/O Frickele
> said put it back in: we rather come in and get it.

13

ECF No. 8, p. 15, ¶ 14.[10] Baez states that he was deprived of a mattress for one month. *Id.* The Complaint alleges no other deprivations.

To succeed on an Eighth Amendment conditions of confinement claim, a plaintiff must establish that: "(1) he was incarcerated under conditions imposing a substantial risk of serious harm, (2) the defendant-official was deliberately indifferent to that substantial risk to his health and safety, and (3) the defendant-official's deliberate indifference caused him harm." *See Bistrian v. Levi,* 696 F.3d 352, 367 (3d Cir. 2015). Conditions of confinement violate the Eighth Amendment if they, "alone or in combination...deprive inmates of the minimal civilized measure of life's necessities." *See Bistrian,* 696 F.3d at 347. Such necessities include "adequate food, clothing, shelter, and medical care." *See Farmer,* 511 U.S. at 832. Thus, "extreme deprivations are required to make out a conditions-of-confinement claim," *see Hudson,* 503 U.S. at 9, although, "[s]ome conditions of confinement" insufficient on their own to establish a claim may violate the Constitution "only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Mammana v. Fed. Bureau of Prisons,* 934 F.3d 368, 372 (3d Cir. 2019) (quoting *Wilson,* 501 U.S. at 304, and *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)).

An allegation of a one-month mattress restriction or deprivation is not sufficient to state a conditions of confinement claim under the Eighth Amendment. *See, e.g., Wilks v. City of Philadelphia,* 2019 WL 4261159, at *5 (E.D. Pa. Sept. 6, 2019) (plaintiff's concerns with his bedding, food, showers, and stagnant water over a six-month period do not rise to the level of inhumane). Furthermore, although Baez was not provided with a mattress, he does not allege he was denied a bed. As this Court has pointed out, this distinction "is significant as the cases note that provision of neither a bed (perhaps in the form of a concrete or metal slab or even something called a 'boat') or, alternatively, provision of a mattress is an important consideration in performing the constitutional

---

[10] C/O Frickele is not named as a defendant in this case.

analysis. Where a bed is provided but without a mattress, there may be no constitutional violation." *See Coleman v. Hodges*, 2018 WL 6618459, at *6-7 (W.D. Pa. Nov. 30, 2018) (citing *Alfred v. Bryant*, 378 Fed. Appx. 977, 980 (11th Cir. 2010) (holding that "[o]bjectively speaking, sleeping in a steel bed without a mattress for eighteen days, though uncomfortable, is not so extreme as to violate contemporary standards of decency"). Although Baez' claimed deprivation of approximately a month is a somewhat more lengthy privation than seen in other cases, it is not unconstitutional. *See, e.g., Schroeder v. Kaplan*, 1995 WL 398878, at *2 (9th Cir. July 7, 1995). *See also Freeman v Miller*, 615 Fed. Appx. 72, 77-78 (3d Cir. 2015) (concluding that the denial of a mattress for seven (7) days did not violate the Eighth Amendment); *Adderly v Ferrier*, 419 Fed. Appx 135, 139 (3d Cir. 2011) (per curiam) (same); *Coleman v. Hodges*, 2018 WL 6618459, at *6-7 (W.D. Pa. Nov. 30, 2018) (citing cases concluding that the denial of a mattress for a short period of time did not violate the Fourteenth Amendment), *report and recommendation adopted*, 2018 WL 6618408 (W.D. Pa. Dec. 18, 2018)).

Nothing in the Amended Complaint suggests that Baez' mattress restriction amounted to punishment, retaliation, or deprivation of any basic human need such as food, medical care, sanitation, or security. And importantly, the Complaint does not allege that Baez suffered any physical injury as a result of the lack of a mattress. *Compare McClure v. Haste*, 820 Fed. Appx. 125 (3d Cir. July 8, 2020) (summary judgment denied where prisoner-plaintiff was denied a mattress during the day for 200-days and where plaintiff suffered from preexisting back problems).

Therefore, the Eighth Amendment conditions of confinement claim against Defendant Froehlich will be dismissed.

5.      Other Claims As Construed From the Complaint

Baez makes other factual allegations in his Complaint that are not immediately identifiable as constitutional claims. Notwithstanding his pro se status, Baez—like any litigant—must allege facts sufficient to state a claim as to each Defendant. *Id.* (citing *Brandt v. Thuring*, 2019 WL 1418125, at *4

(D.N.J. Mar. 29, 2019); *Hamilton v. Jamieson*, 355 F. Supp. 290, 298 (E.D. Pa. 1973) ("We are not required to stretch our imagination to manufacture allegations to supplement the complaint ..."));
*Cassell v. Cty. of Montgomery*, 2017 WL 2672653, at *3 (E.D Pa. Jun. 20, 2017) ("pro se litigants must nevertheless adhere to basic pleading requirements"); *Case v. State Farm Mut. Auto. Ins. Co.*, 294 F.2d 676, 678 (5th Cir. 1961)("[T]here is no duty [on the part] of the trial court or appellate court to create a claim which appellant has not spelled out in his pleading."). However, consistent with its obligation to construe Baez' pro se Complaint liberally, the Court will endeavor to identify any other claims reasonably supported by its allegations. *See, e.g., Colon v. Anglikowski*, 2021 WL 2875477, at *3 n.2 (W.D. Pa. Jul. 8, 2021).

5.1.    Baez' potential supervisory liability claim against Defendant Clark will be dismissed.

At page 13 of the Complaint, Baez makes the following allegations against Defendant Clark, the Facility Manager at SCI-Albion:

> On 4-29-20, Clark response was to uphold the grievance offer which happens to be Defendant Dube, who could be proved to have gave a false statement. I spoke to defendant Clark in person about these issues, therefore defendant Clark knew about he unlawful conduct and facilitated it, approved it, condoned it.

ECF No. 8, p. 13, ¶ 13. The grievance Baez references is taken to be Grievance 855779, which concerns Froehlich providing Baez with razors, and what Baez calls "the provoking incident," the OC spray use on March 7, 2020. To the extent this allegation can be construed as alleging a claim of supervisory liability, it fails.

"A defendant in a civil rights action 'must have personal involvement in the alleged wrongs to be liable,' and 'cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.'" *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007)). Supervisory civil rights liability cannot be imposed under section 1983 on a respondeat superior theory. *Rode*, 845 F.2d at 1207 (citations omitted). Personal involvement may be shown through allegations of

personal direction or actual knowledge and acquiescence. *Id.*, at 1208. Neither the filing of a grievance nor the participation in the after-the-fact review of a grievance are sufficient to show personal involvement. *Id.* The Complaint merely alleges that Defendant Clark upheld the denial of his grievance. This allegation, absent some allegation that Defendant Clark was personally involved in providing Baez with razors or spraying his cell with OC spray, fails to state a claim. *See, e.g., Stockton v. Wetzel*, 2017 WL 3034800, at *5 (M.D. Pa. July 18, 2017) (citing *Washington v. Showalter*, 494 Fed. Appx. 268, 271-72 (3d Cir. 2012)).

      5.2.     Allegations against Defendant Varner do not state a claim.

      Also regarding his grievance, a generous reading of the Complaint indicates a possible claim against Defendant Varner. The Complaint alleges that Varner, the "Chief Grievance Officer," improperly denied his grievance because it contained information about multiple events, in violation of DOC policy. *See* ECF No. 8, p. 18, ¶ 16. DC-ADM 804 provides that "[a]ny grievance based on separate events must be presented separately, unless it is necessary to combine the issues to support the claim." *See, e.g., Coit v. Fisher*, 2020 WL 4260762, at *4 (M.D. Pa. July 24, 2020) (quoting DC-ADM 804). Baez claims that Varner's rejection of his grievance was improper because "it was necessary to combine the issues to support a claim." *Id.* Therefore, he suggests, "it must be unconstitutional to break policy." ECF No. 8, p. 18, ¶ 16.

      Even if Varner misinterpreted or misapplied DC-ADM 804, this does not support a claim. *See, e.g., Williams v. Overmyer*, 2020 WL 746844, at *1 (W.D. Pa. Feb. 14, 2020) (a DOC official's failure to follow policy does not support an independent cause of action). Furthermore, Varner's application of this policy was facially reasonable. Baez attached copies of his grievance appeals to the Complaint. Baez' appeal of Grievance 855779 discusses the deployment of OC spray against Baez on March 7, 2020 and Baez' suicide attempt (using razors allegedly provided by Defendant Froehlich) on March 8, 2020. *See* ECF No. 8-1. While these events may be factually related, they

are distinct incidents on separate dates and should have been grieved separately under DOC policy. Therefore, this allegation fails to state a claim against Defendant Varner.

      5.3.    Any claims against the Prison Review Committee members will be dismissed.

      The Complaint alleges that on April 29, 2020, Baez told the PRC (consisting of Defendants Flinchbaugh, Jones, Thompson, and Lucas) that his mattress had not been returned despite his complaints to Defendant Dube on April 1, 2020 and April 22, 2020. ECF No. 8, p. 15, ¶ 14. He then states that he received his mattress the day after making this request to the PRC. *Id; see also id.,* p. 22, ¶ 4.

      First, to the extent Baez' allegations can be interpreted as bringing a claim against the PRC itself, such a claim fails because the PRC is not a person for purposes of § 1983 liability insofar as the DOC is entitled to Eleventh Amendment immunity to lawsuits in federal court. *See Noble v. Wetzel,* 2019 WL 4279975, at *10 (W.D. Pa. Aug. 1, 2019), *report and recommendation adopted,* 2019 WL 4279016 (W.D. Pa. Sept. 10, 2019), *appeal not considered,* 2020 WL 1520075 (3d Cir. Feb. 28, 2020) (citing *Kentucky v. Graham,* 473 U.S. 159, 165-67 (19895).

      Second, any claim against the individual members of the PRC would also fail because the Complaint does not sufficiently allege their personal involvement in any actionable conduct. *See discussion supra.,* Here, Baez' allegations that "Defendant Lucas ignored my asking for help and other things like failure to intervene, along with the (PRC) defendants." ECF No. 8, p. 23, ¶ 8 (mislabeled in Complaint as ¶ 7). As previously discussed, the temporary deprivation of Baez' mattress does not amount to a constitutional claim. And, even if this deprivation supported a claim, the absence of any personal involvement of the PRC Defendants in the deprivation precludes a claim against them.

      5.4.    The allegations against Defendant Lucas related to the opening of Baez' mail to Governor Wolf does not state a claim and will be dismissed.

      According to the Complaint, Baez wrote a letter to the Governor of the Commonwealth, Tom Wolf, "because of a suicide risk." *Id.,* p. 20, ¶ 17. Baez alleges that Defendant Lucas told him

that security opened the letter he sent to the Governor. *Id.* But he claims that "two deputies" had a different story: they had a copy of the letter and the Governor's response, which they kept from Baez. *Id.* These allegations do not state a claim against Lucas because they do not allege her personal involvement in opening Baez' mail or not forwarding him the Governor's response. Those actions were undertaken by unknown "deputies" who are not named as defendants in this litigation. Therefore, to the extent Baez is attempting to raise a claim against Lucas relating to his mail, it fails. *See, e.g., Gibson v. Erickson,* 830 Fed. Appx. 372, 373 (3d Cir. Dec. 2, 2020) (dismissing claim where plaintiff did not plead that defendant was involved in screening the mail).

> 5.5.    Any remaining allegations against the Defendants fail to allege a constitutional violation.

Finally, the Court has reviewed the numerous other factual allegations of the Complaint and found no other viable constitutional claim. For example, Baez alleges that Defendant Dube "whispered to me for 10 to 15 minutes to come out and sign off on grievance under #855779. He said he got a good deal for me which I refuse to come out my cell." ECF No. 8, p. 11, ¶ 11. This allegation cannot be construed to raise a constitutional claim. Baez does not claim Dube threatened him with physical violence or retaliation. Nor does it infer that Dube denied medical care or was otherwise deliberately indifferent to any need of Baez. Instead, it appears this exchange was merely an attempt to settle Baez' grievance. Nothing beyond that can be construed from this or any other remaining allegation of the Complaint.

6.    Conclusion and Leave to Amend

The Defendants' Motion to Dismiss will be DENIED as to Baez' claim against Defendant Froehlich concerning his encouragement of Baez' suicide attempt and DENIED as to Baez' claim against Defendant Bednoro as concerns the use of OC spray on March 7, 2020. The Defendants' motion will be GRANTED as to the remaining claims. However because the dismissal of the remaining claims is primarily based on factual deficiencies, they will be dismissed without prejudice

and Baez will be afforded an opportunity to amend his Complaint in an attempt to cure those

inadequacies.  An appropriate order will follow.

Submitted this 23rd day of September, 2021.

HON. RICHARD A. LANZILLO
United States Magistrate Judge